[LANCASTER, JUNE 1, 1829.]

## The COMMONWEALTH *against* CLARKSON, Administrator of PASSMORE.

### APPEAL.

Mutual demands extinguish each other by operation of law, without actual defalcation by the act of the parties.

Therefore, where a prothonotary and a sheriff received fees for each other during their continuance in office, the fees received by the prothonotary for the sheriff, against which he was entitled to set off money received by the sheriff for him, were held to have been fees received by the prothonotary while in office, and liable to taxation under the act of the 10th of *March*, 1810, although no actual settlement of accounts took place between them until long after the prothonotary had gone out of office.

APPEAL from the decision of the Circuit Court of *Dauphin* county.

The accounts of the defendant's intestate, *John Passmore*, who had been prothonotary of the Supreme Court for the *Lancaster* district, and of the Court of Common Pleas of *Lancaster* county, and clerk of the Orphans' Court, Quarter Sessions, and Oyer and Terminer, in and for the county of *Lancaster*, having been settled on the 18th of *May*, 1824, by the auditor general and state treasurer, who found a balance against him of eight thousand one hundred and ninety-nine dollars and thirteen and three quarter cents; he, on the 28th of *July*, 1824, entered an appeal to the Court of Common Pleas of *Dauphin* county, under the 11th section of the act entitled, "an act to amend and consolidate the several acts relating to the public monies, and for other purposes," passed on the 30th of *March*, 1811.

On the 7th of *April*, 1829, a verdict passed against the defendant in the Circuit Court for two thousand eight hundred and nineteen dollars and sixty-seven cents.

(The Commonwealth *v.* Clarkson, Administrator of Passmore.)

On the trial, it appeared, that *John Passmore* had been appointed prothonotary of the Supreme Court for the *Lancaster* district and of the Court of Common Pleas for the county of *Lancaster,* and also clerk of the Orphans' Court, and courts of Quarter Sessions and Oyer and Terminer, of the same county, on the 3d of *January,* 1809. He continued to hold the office of clerk of the Orphans' Court until the 6th of *February,* 1816, of prothonotary of the Supreme Court and clerk of the courts of Oyer and Terminer and Quarter Sessions, until the 4th of *March,* 1817, and of prothonotary of the Court of Common Pleas until the 10th of *April,* 1818.

*Henry Reigart,* was sheriff of *Lancaster* county from 'October, 1812, till *October,* 1815; and *George Hambright* was sheriff of the said county from *October* 1815, till *October,* 1818.

Among the items contained in the account settled by the auditor general and state treasurer, were the following: viz.

" For amount of fees collected for *Henry Reigart,*
    formerly sheriff of *Lancaster* county, - - $1,967,87

" For fees collected for *George Hambright,*
    late sheriff of *Lancaster* county, - - - $2,201,34

These fees were received by *John Passmore,* in the course of his business and during his continuance in office, for sheriffs *Reigart* and *Hambright.* During their continuance in office they had also received fees for Mr. *Passmore.* A considerable time after Mr. *Passmore* had gone out of office, he settled with these gentlemen, and then, and not until then, they respectively agreed, that these sums should be credited in his account against them. It appeared from Mr. *Passmore's* return to the auditor general, which was read in evidence on the trial, by the counsel for the commonwealth, that he had repeatedly urged settlements at an earlier period with Mr. *Reigart* and Mr. *Hambright,* but could not accomplish his purpose on account of their embarrassments.

The question for the decision of the court was, whether the two sums above stated, were taxable? The decision of the Circuit Court being against the defendant, he entered this appeal, because the judge instructed the jury that the plaintiff was entitled to a verdict for one half of the amount of those sums, when he ought to have instructed them that they were not liable to taxation.

*Buchanan,* for the appellant.—The construction of the act of the 10th of *March,* 1810, *Purd. Dig.* 608, being that those fees only are taxable which were received by the officer during his continuance in office, as determined in *Heister* v. *The Commonwealth,* the question on which the decision of this cause depends, is, whether the appropriation of money received by the prothonotary for the sheriff, to fees received by the sheriff for the prothonotary, be

(The Commonwealth *v.* Clarkson, Administrator of Passmore.)

a receipt of the fees by the prothonotary, at the time he received the money of the sheriff, or at the time the appropriation is actually made? He argued in support of the negative of the proposition, and cited *Turner* v. *Fendall,* 1 *Cranch,* 117. 6 *Bac. Ab.* 135.

*Douglass,* for the commonwealth, answered—That the fees were substantially received while the prothonotary was in office, because, the right of set-off then existed, which was equivalent to actual payment.

The opinion of the court was delivered by

GIBSON, C. J.—Mr. *Passmore,* while in office, received fees which were due to the sheriff, and the sheriff during the same period, received fees which were due to Mr. *Passmore;* and the question is, whether these cross demands extinguished each other by operation of law, or whether that effect was produced for the first time when actual defalcation took place by the act of the parties?

Defalcation was unknown at the common law, according to which, mutual debts were distinct and inextinguishable except by actual payment or release. But the statute of set-off which was intended to prevent circuity, has been held to operate on the rights of the parties before action brought, or an act done by either of them. In *Murray* v. *Williamson,* (3 *Binn.* 135,) a set-off was sustained against an administrator, "because," as Judge YEATES well observed, " the sum really due at the death of the party is the true debt." On no other principle could there be a set-off against the representative of an insolvent decedent; instead of which the defendant would have to pay the demand against him first, and then come in with the other creditors for a dividend of his own money according to the degree of his debt. This we see is not the case, every thing but the balance having been previously extinguished. We have other instances of the same principle, where it did not depend on positive law. In *Griffith* v. *Chew,* (8 *Serg. & Rawle,* 17,) where the obligee in a joint and several bond, had appointed an administrator of one of the obligors, having assets, to be one of his own executors, it was held that the debt was paid presently, the law having made the application without waiting for the act of the party. On the same principle a retainer, which was formerly pleaded specially, may now be given in evidence on *plene administravit,* the law having administered the assets in the hands of the executor by payment of his debt. The application of this principle is consistent with both justice and convenience, particularly where the party to whose use the money was received, had no property specifically in the coin or bills of which it consisted, and to whom a recovery could not be more beneficial than a retainer of the money already in hand. According to both reason and authority, therefore, the fees received by the sheriff were virtually in the hands of Mr. *Passmore,* the instant that he and the sheriff became reci-

(The Commonwealth *v.* Clarkson, Administrator of Passmore.)

procally holders of each other's funds; and, as this occurred while Mr. *Passmore* was in office, the fees in question are subject to taxation.

Judgment affirmed.