## ¡Himes *against* Barnitz.

8w 39
173 516

Mutual demands do not necessarily extinguish each other by operation of law: set-off is permissive, not compulsory; and if there be no agreement between the parties, either may hold and set off his claim, or, if he choose, assign it and leave the other party to his legal remedy.

In the appropriation of the proceeds of a sheriff's sale, though a party claimant has a prior judgment, yet, if insolvent, he shall not take the money raised, to the prejudice of a subsequent judgment creditor to whom he is bound as surety for the payment of his judgment.

The assignee of a judgment takes it subject to all the equities existing between the assignor and other persons at the time.

The fact of an assignment of a judgment having been filed of record with the papers, does not dispense with the necessity of calling the subscribing witness to it.

One who has assigned a claim as a collateral security for the payment of a debt due by him, is incompetent to testify in a suit brought to recover that claim, although released by the person to whom he made the assignment, if it appear that he had previously been discharged under the insolvent laws, and made a transfer for the benefit of his creditors.

Entries in a book, of payments made for another, may be given in evidence, if accompanied by proof that the person had constant access to the books and assented to the entries.

ERROR to the common pleas of *Cumberland* county.

George Himes, Lewis Harlan, Arabella McClure, administratrix of David McClure, and Carlisle Bank against Charles Barnitz.

Issue directed by the court to try the right to the proceeds of the sale of the real estate of Peter Ege, sold by the sheriff.

The testimony and bills of exception taken in this case were very voluminous. It is unnecessary to make any other statement of it than that contained in the opinion of the court.

*Graham* and *Alexander*, for plaintiffs in error.
*Gaullaher* and *Biddle*, for defendants in error.

The opinion of the Court was delivered by

SERGEANT, J.—This case involves so great a variety of matters, that it is no easy task to place it in order and render it intelligible. As far as can be collected from the paper-book and statements furnished during the argument, it appears to be as follows:

Michael Ege, Sen., of Cumberland county, was largely concerned in conducting several establishments for the manufacture of iron, and died in the year 1814, leaving three sons, Peter, George, and Michael, and two daughters, Mrs Chambers and Mrs Wilson. The three sons took out letters of administration, and on a settlement of their accounts by Peter and George, respectively, they were in advance to the estate certain sums. Michael Ege, Jun., administered the chief part of the estate, and died leaving a will, and appointing John B. Gibson, Esq. and his wife Mary Ege his executors. After the death of his father, Peter Ege appears to have continued in the iron business at a furnace and forge, and became indebted to his brother Michael in his lifetime. The executors of Michael obtained several judgments against Peter Ege in 1828 and 1831, of which two were the judgments now in dispute, viz., No. 173, August term 1831, entered November 5, 1831, for 1319 dollars, and revived January 3, 1835, by award on *scire facias;* No. 65, April term 1835, for 1575 dollars 98 cents; and No. 174, August term 1835, entered November 5, 1831, for 2049 dollars 60 cents, and revived also January 3, 1835, by award on *scire facias* for No. 66, April term 1835, for 2438 dollars 54 cents. The other two judgments were otherwise disposed of, and were not in question in this case. Besides these judgments in 1831, Peter Ege was indebted to the executors of Michael Ege in 1432 dollars 57 cents for pig metal sold in August 1835. In 1834 other judgments were entered by various individuals against Peter Ege, of which the judgments in favour of the defendants, George Himes, Lewis Harlan, Arabella M'Clure, Administratrix of David M'Clure, and the Carlisle Bank, stand next in order after the two judgments of Michael Ege's executors, and claim to be paid out of the fund in court in preference. There appears also to be another judgment in that year by John H. Weaver, not one of the parties to this issue. It seems to be admitted

that if the judgments in the name of Michael Ege's executors have been satisfied and relinquished or are not available in the hands of Barnitz, in preference to the defendants, they or some of them are entitled to the money in question. The issue, however, is to determine whether Barnitz is entitled, without otherwise deciding as to the rights of others.

The plaintiff, Barnitz, claims the amount of these judgments by virtue of a transfer from Joseph A. and Michael P. Ege, the sons of Peter Ege, who obtained it as follows: Peter Ege being under great embarrassment and pressed with debts, on the 6th of March 1835, leased his furnace and forge to his sons at a rent, and assigned to them the same day by another instrument, all his stock and property at Pine Grove Furnace and Laurel Hill Forge, stating it to be in consideration of 20,000 dollars to him paid by his sons. It was alleged that his sons had incurred debts, and made payments, and assumed responsibilities on their father's account to more than this amount. In June 1835, the whole claim of Peter Ege against the executors of Michael Ege was finally adjusted, consisting of two items; one, the balance due to him on his own administration account, 761 dollars 44 cents, as of the 8th October 1829, which was agreed to be set off against the judgment for the book account. The other was the sum due to him by Michael as administrator of his father's estate, 5346 dollars 45 cents, with interest. Joseph A. and Michael P. Ege, to indemnify themselves, as was alleged, for the large advances made by them to their father, on the 16th January 1837, obtained from their father the following order directed to Wm. M. Biddle, Esq., attorney for estate of Michael Ege, Jun., deceased: "Dear Sir, you will please to transfer and assign to Michael P. and Joseph A. Ege for their use, any amount of the judgments in favour of the estate of Michael Ege, Jun., which may be liquidated by a settlement with said estate, and oblige yours, &c., Peter Ege." On a settlement made the 7th of February 1837, the whole debt and interest due from Michael Ege's estate was 6967 dollars 86 cents, and the debt due by Peter Ege to Michael Ege's estate was 7808 dollars 29 cents, leaving a balance due from Peter to Michael Ege's estate. On the same 7th day of February 1837, Joseph A. and Michael P. Ege obtained from their father another instrument under his seal, acknowledging he had received the sum of 6967 dollars 86 cents in full of the amount due him for his distributive share of Michael Ege's estate, (5871 dollars 44 cents including interest,) and also for the sum due him on the balance of his own administration account 1096 dollars 42 cents, the same having been settled in claims of the estate of Michael Ege, Jun., against him, in consideration of which he thereby remised, released, and forever discharged the same estate. Taking this instrument to Mrs Ege, the executrix, and claiming to hold the demand due to their father, by assignment from him, the sons, Joseph A. and Michael P. Ege, obtained from her a paper under her seal, acknow-

[Himes v. Barnitz.]

ledging to have received from them the sum of 3678 dollars, in consideration of which she assigned to them the judgment No. 66, April term 1834, and 933 dollars 50 cents of the other judgment No. 65, April term 1834, leaving 840 dollars 43 cents of the latter due her.

The defendants now contend, first, that this assignment from the father to the sons was without any consideration passing from the sons, and therefore was fraudulent and void; to which the plaintiff answers that there was such a consideration namely, moneys paid and advanced by the sons to the father. They contend, secondly, that at the time when the judgments were entered on the awards, 3d January 1835, there was an explicit agreement between Mr Alexander for the executors of Michael Ege, and Mr Oliver, agent for Peter Ege, that the sum due to Peter Ege on the administration account of Michael should be set off against the amount of the judgments, as soon as the former should be ascertained, the administration accounts being then depending in court in controversy, and not finally adjusted till June 1835, when the exact balance due to Peter was ascertained. To this the plaintiff replies that no such agreement was made, and evidence on both sides was given. The plaintiff also says that if such agreement was made, yet it was executory, and would not bind the claim in the hands of P. Ege so as to affect it when transferred to his assignee for valuable consideration. Thirdly, it is objected that in point of law, the two demands extinguished each other, so far as the lesser sum paid the greater, and that after this, M. Ege could not assign it. The answer is, that set-off is permissive, not compulsory, and that if there were no agreement, either might hold and set off his claim, or, if he chose, assign it and leave the other party to his legal remedy.

On the 2d of August 1837, J. A. and M. P. Ege purchased a store of goods of the plaintiff, Charles Barnitz, for which they gave him five promissory notes of that date, of 1000 dollars each, except the last which was for 1496 dollars 19 cents, payable in eight, fourteen, twenty-two, thirty and thirty-eight months, and by an instrument under seal, reciting these two notes, assigned these two judgments against their father as a collateral security for the payment of the notes, and upon payment thereof, the judgments to be transferred to them. Parol evidence was given for the purpose of showing that Barnitz had examined into the matters connected with the assignment of the judgments to the sons.

There is another fact in the case which is material in regard to Mrs McClure, one of the defendants in this issue, and the only one of them whom it concerns. It appears that previous to the 6th of March 1835, a number of the creditors of P. Ege, among whom was D. McClure, had issued executions on their judgments against him, and had levied on his personal estate, which on that day was sold by him to his sons. To get rid of these executions, the sons,

[Himes v. Barnitz.]

by a note annexed to the bill of sale, stated that the 20,000 dollars consideration money of the sale was paid as follows: liens on the personal property, being executions in the following cases: Carlisle Bank, &c. &c., *McClure, &c.,* and at the close there is this engagement: " Joseph A. Ege and Michael P. Ege engage to Peter Ege to discharge the above debts, and they hereby undertake to the respective creditors to pay the said debts." Signed, J. A. Ege and M. P. Ege.

The question in this cause, is, whether Barnitz's judgments are entitled to be first paid: and it is contended in the first place, that they were satisfied and extinguished to the amount of the claims by Peter Ege against Michael's executors, existing at the time these judgments were rendered, viz. 3d of January 1835. Set-offs, however, between opposite claimants, are permissive, not compulsory. The right to defalk from the claim of a plaintiff the amount due by him to the defendant, is a privilege given by our act of assembly of 1705, and afterwards by the English statutes of set-off, not an obligation. It never was supposed that if one man sues another, the defendant is obliged to set off the debt due to him from the plaintiff, and that if he did not choose to do it, his demand could be considered in any respect impaired, or his right to recover it affected. If the defendant pleads set-off, the plaintiff may reply the statute of limitations, though the time had not run out when the debts both existed. The only exception to this rule is where the defendant has been required to set off his claim by legislative enactment; and there are some instances of that kind in our statute book, to be found in the 7th and 20th sections of the act of the 20th of March 1810, relative to justices of the peace.

But these special legislative provisions prove the rule of the common law to be different. Then if the party himself do not choose to extinguish his claim by set-off, a third person has no right to say he has done so, unless he can show some equity in himself which requires it, or some duty on the party imposing on him an obligation, to make this set-off and extinguishment. Subsequent judgment creditors are third persons, with respect to whom, ordinarily, no such equity exists, and no such duty arises, though there may be cases in which it may. In Com. *v.* Clarkson, 1 *Rawle* 291, the defendant was an officer accountable to the commonwealth for fees of office. He suffered his fees to remain in the hands of the sheriff without collecting them, retaining in his hands fees belonging to the sheriff. It was his duty to the commonwealth to collect his fees, as received by the sheriff, in order that they might be charged with the tax to the commonwealth, or to have settled forthwith with the sheriff, and set off one against the other. Not doing so, he was either chargeable with an omission of his duty to the detriment of the public treasury, or with the alternative of being considered as having actually appropriated the one to balance the other, and holding it as his own; and the latter was to be presumed rather than

the former.   In Conrad *v.* Hopkins, 2 *Rawle* 316, it was a contrivance to throw upon an innocent purchaser a claim of which the party had in his hands the means of payment.   We think, therefore, there was no error in the answer of the court, to the position laid down by the plaintiff's counsel in the point first put, that the claims of Peter Ege must be set off so far as their amount would go against the judgments of M. Ege's executors, and extinguish them to that extent: and we think the judgments might still be considered as subsisting, if the executors of Mrs Ege chose so to treat them.

If, however, at the time these judgments were rendered, there was an agreement by the executors of M. Ege by their agent on the one side, and Peter Ege, by his agent on the other, that the claims of Peter Ege, when ascertained and settled, should be deducted from the amount of these judgments, I see no reason why such an agreement should not be valid and obligatory, and why third persons, who had an interest in such a bargain, might not insist on its fulfilment for their benefit.   Had it not been for such agreement, it might be said the judgments would not have been obtained to that amount, or perhaps not left after the administration accounts were settled, and then only for the balance.   Now an actual payment of a judgment may be taken advantage of by third persons—why should not an agreement that certain funds to be received at a future day should be applied to its payment, be considered as such an appropriation?   But this is when things continue in the same state until the satisfaction is received: for if the party to make it disables himself from doing it, the rule does not apply.   Here it is alleged that previous to the 20th of February 1837, when Mrs Ege assigned, Peter Ege had disposed of his claim to his sons, and that the release of the 8th of February 1837, though in the name of Peter Ege, was really by him for the use of his sons, who made a new contract with Mrs Ege for the transfer of the judgments to them: and this was a question of fact on the evidence.

A third question to be considered, is, supposing these judgments to be available in the hands of Joseph H. and M. P. Ege, as against subsequent judgment creditors, under the other circumstances of this case, has not Mrs McClure, the administratrix of David McClure, one of the defendants, and a subsequent judgment creditor, a superior equity, which would preclude Joseph H. and M. P. Ege from setting up these judgments against her, so as to prevent her from receiving the amount of her judgment from the proceeds of sale? And the ground on which her counsel contend that she has, is, that she was one of the judgment creditors who had levied executions on the personal property of Peter Ege, which he afterwards sold to Joseph A. and M. P. Ege, on the 6th of March 1835, and that in consideration of their releasing this property from the liens of their executions, Joseph A. and M. P. Ege undertook to Peter Ege, and also to these respective creditors, to pay their debts.   They thus became themselves the debtors of Mrs McClure, and sureties for

Peter Ege, and they ought not now to be permitted to purchase in a prior judgment, and thus sweep away this money from their creditor, put it into their own pockets, and leave Mrs McClure no remedy but against them now insolvent: but that they are in equity bound, on receiving this money, to pay Mrs McClure, and therefore the court should allow her to take it at once, on her judgment, in preference to them. And, in this position, we think the counsel right, and that the case is the same in principle with the case of Erb's appeal, already decided by this court, and reported in 2 *Penn. Rep.* 296, where it was held, that though a party has the prior judgment, yet, if insolvent, he shall not take the money raised by a sale of real estate under it, to the prejudice of a subsequent judgment creditor, to whom he is bound as surety debtor for the payment of his judgment, but the proceeds of sale will be appropriated to the latter. We think, in the answer of the court to the third point, there was error.

The only question that remains to be considered in the charge of the court, is, whether Barnitz is in a better situation, in law or equity, than Joseph A. and M. P. Ege would be; and we think he is not. He is not an assignee of a negotiable instrument, but of a chose in action, a judgment, which he takes subject, in point of law, to all the equities existing between his assignors and other persons at the time. He is not a purchaser for a valuable consideration; on the contrary, he received it only as a collateral security for the payment of the notes to the full amount of the consideration money. And it would seem, from all the parol evidence that we have on the subject, that he had actual notice of the origin and nature of the claim at the time he took it. I perceive no equity in his claim which is sufficient to countervail the clear equity existing in Mrs McClure against Joseph A. and M. P. Ege. I am therefore of opinion that the court erred in their answer to the second point, and that Mrs McClure, as administratrix of D. McClure, was entitled to be paid the amount of her claim on her judgment, in preference to the plaintiff.

Twelve bills of exceptions to evidence were taken by the defendants below.

1. The first was to the admission of the transfer by Mary Ege, dated the 20th of February 1837, to J. A. and M. P. Ege, without being first proved by the subscribing witness, F. Watts, Esq. As Mr Watts was afterwards called, and proved the transfer, the defect in the evidence was cured.

2. The second exception is similar. It was to the admission of the transfer by Joseph A. and M. P. Ege, to the plaintiff Charles Barnitz, dated the 2d of August 1837, without calling John M. Woodburn, the subscribing witness. This objection was certainly fatal. It is a settled rule, that where a paper is executed in the presence of a subscribing witness, and attested by him, his evidence of the execution is the best, and the party is bound to resort to it,

VIII.—E

unless in some special cases. The mere filing the paper in the prothonotary's office, as a document in the cause, could not enable the plaintiff to dispense with this rule of law. It cannot be urged that the paper was not material, because the issue trying was, whether Charles Barnitz was entitled to the money in court. This paper was offered as the evidence of his title, and was therefore material to the issue.

3. Joseph Ege was called as a witness on behalf of the plaintiff, and objected to by the defendants, as being interested in the cause. A release was then produced from the plaintiff to him, dated the 21st of January 1839. The assignment to the plaintiff having been a collateral security for the payment of certain notes, the defendants alleged that some of the notes were assigned, and the plaintiff was called on to produce them. The defendants then called Mr. Watts, from whose testimony it appeared that one of these notes had been assigned to Galbraith Ege by the plaintiff. Another witness then testified that the note referred to was 500 dollars, some of the original notes being divided at the request of the plaintiff, and that the plaintiff had told the witness there were other notes assigned. Galbraith Ege then produced a note dated March 28th 1838, from Joseph A. and M. P. Ege, to him, which was admitted to have been a substitution for a former note.

The claim in the present suit was assigned to Charles Barnitz by Joseph A. Ege and his brother, as collateral security for the notes given by them in payment of the store purchased, and not as the absolute property of the plaintiff. Therefore, if Joseph A. & M. P. Ege should afterwards pay these notes, they would be entitled to call upon the plaintiff to return the judgments or their value; and this indeed the assignment of the 2d of August 1837 expressly stipulates. They had, therefore, *prima facie* an interest in the success of the claim of the plaintiff in this suit. That interest is not got rid of by the plaintiff's release to one of them: for if he held the notes, and the release extinguished his claim on them, this would be tantamount to his payment, and they might call for the restoration of the judgments or their proceeds. If the notes were not released, or had been parted with, they continued liable to the holders of the notes, and if they afterwards paid them, might call for the restoration of the collateral security. Their release to him of their claim to that restoration, if such had been made, would seem to be more pertinent, were it not that they had taken the benefit of the insolvent laws, and parted with their right in the judgments to their assignees. If, as is suggested by the court below, the transfer of the notes by the plaintiff to third persons carried with it a claim on the collateral security taken, Joseph A. & M. P. Ege were still interested in the realization of that security by such assignees: because, if it went to pay the note-holders, it relieved them so far from liability, or if they paid the notes, their assignees could claim a restoration of the collateral security, and by reason

[Himes v. Barnitz.]

of the resulting interest they had in the property transferred to their assignees under the insolvent laws, they were interested in every claim which such assignees might have against others. It would seem, therefore, that whether the plaintiff had parted with the notes or not, Joseph A. Ege had an interest in the plaintiff's success in the suit, in recovering the amount of these judgments, and ought to have been rejected.

4. The fourth exception is to the admission of the order by Peter Ege on W. M. Biddle, Esq., as attorney for the estate of M. Ege, Jun., deceased, dated the 16th of January 1837. This is an order on him to transfer to his sons, for their use, any amount of the judgments in favour of the estate of Michael Ege, Jun., deceased, which might be liquidated with said estate. Peter Ege had certainly no right or power to transfer to another, judgments against himself in favour of his creditor. As worded, the order involves an absurdity. As showing an assignment of his claims against Michael Ege to his sons, it is nugatory, for it does not purport to do any such thing. Taken in connection with other evidence to show such assignment, and as explained by that evidence, it might be treated as done with a design to carry the assignment into effect. Without some such explanation, I should deem it inadmissible. The plaintiff offered to accompany it with something of that kind, and evidence to show an assignment in consideration of the advance of funds by the sons on their father's account was given. It could only be by reason of such further evidence the paper could be received at all.

5. This exception seems not to be substantiated, for the reasons stated by the court below.

6. The sixth exception was to the evidence of Joseph A. Ege, that he and his brother owned the funds transferred to them in consideration of advancements by and for their father, Peter Ege, and his agreements, with which the executors of Michael Ege, were satisfied in regard to the judgments assigned to them. I perceive no error in this.

The 7th, 8th, 9th, and 10th relate to entries in the books kept for Joseph A. & M. P. Ege, after their purchase of charges against Peter Ege for moneys paid on his account. Evidence had been given that Peter Ege knew of these payments, and of the manner of keeping the books, and assented to it: that he would come down to the works and assent to nearly all the entries of the clerk: that he had free intercourse before and after. Under these particular circumstances we think the books might go in evidence to the jury, though such entries would not ordinarily be evidence to prove the payment of a debt on account of another.

11. The eleventh is the receiving in evidence judgments assumed and paid by Joseph A. & M. P. Ege for P. Ege, after the 7th of February, 1837, the said debts having been owing to Peter previously. I am not able to see the bearing of this evidence on the issue. Before that date all the transactions in question were closed,

[Himes v. Barnitz.]

and it is not alleged that these payments were under any previous responsibility, but were new assumptions.

12. Evidence was received to show the large amount of indebtedness of Joseph A. & M. P. Ege, growing out of the business referred to. It is not easy to understand the extent of this evidence. If the business referred to consisted of the responsibilities assumed by Joseph A. & M. P. Ege before the assignment of the judgment, or even payments afterwards on their account, it might be relevant to show the consideration of the assignment; otherwise it seems to be irrelevant and embarrassing in its tendency.

Judgment reversed, and *venire facias de novo* awarded.