## Moore's Appeal.

The neglect of the sheriff to levy upon the personal property of a defendant in an execution, and suffering the same to be carried away and disposed of by the defendant himself, will not prejudice the claim of the plaintiff founded upon his judgment as a lien upon the defendant's real estate.

In the appropriation of the proceeds of sale of land by the sheriff, the assignee of a mortgage which has priority of lien will be preferred to a subsequent judgment creditor who holds the guaranty of the mortgagee for the security of his judgment, although it be prior in date to that of the assignment.

APPEAL from the decree of the Court of Common Pleas of *Cumberland* county, appropriating the proceeds of the sale of the real estate of John Moore, amounting to $27,000.

The Southern Loan Co. (and two other judgment creditors who claimed under like circumstances) obtained their judgment on the 15th November 1841 for $2122. On the 18th August 1842, a *fieri facias* issued upon this judgment, which was "levied on defendant's personal property, to wit, six horses, two wagons, two carts," &c., (specifying a number of articles), "and all defendant's personal property." On the 25th April 1843, writ returned with this levy. To August term 1843 a *venditioni exponas* issued, which the sheriff returned, "Property sold and proceeds applied to prior executions." It was proved that when the *fieri facias* issued on the 18th August 1842, John Moore's furnace was in blast making pig-metal, and that before the return day of the writ there were nearly 200 tons of iron made there, all of which was disposed of by John Moore himself, and that 18½ tons of it were actually delivered to the sheriff himself, who had the *fieri facias* in his hands, on a private contract of his own with John Moore.

Barnitz, Holcomb and Seevers, whose judgments were obtained on the 10th May 1843, objected to the payment of the Southern Loan Co.'s judgment, on the ground that the money should have been made out of the defendant's personal property. The court below overruled these objections, and directed the judgments to be paid.

The next disputed claim was a mortgage, John Moore to N. Wilson Woods, dated and entered 8th May 1843. Secured upon the same real estate out of which the money now in court is raised. Conditioned for the payment of $6027.70 to said Woods in the following sums, viz.: $3275.70 debt by bond to said Woods, dated 8th May 1843. Interest from date, payable 1st January 1844. Also $2000, in which the said Moore and N. W. Woods stand bound to William Craighead per bond dated 12th September 1837. Interest paid until 14th April 1842. Also, a note of John Moore, endorsed by N. W. Woods and William Moore, to Jacob

Barnitz, 26th January 1842, for $1000, on which $500 was paid 10th December 1842; balance due. A note, John Moore and N. W. Woods to Jacob Beltzhoover, 19th March 1842, for $110. Also, a note of John Moore and N. W. Woods to —— M'Culloch, administrator of —— Wilt, for the payment of $142.

On the 23d December 1843, N. W. Woods assigned to William Moore $2450 of this mortgage; he had previously assigned $877 of it to Jacob Barnitz, both of which assignments were noted upon the record of the mortgage.

Charles Barnitz, who obtained a judgment against John Moore on the 10th May 1843 for $1000, claimed to take out of this mortgage in preference to William Moore, the assignee, the amount of his judgment, on the ground that N. W. Woods had agreed to guarantee the payment of his judgment, and to sustain his claim he gave in evidence the following paper:

"Whereas, John Moore has this day confessed an amicable judgment to Charles Barnitz for the sum of $1000, payable six months after date, and for the better securing the said Charles Barnitz, I do hereby agree and covenant that in case the said judgment shall not be paid by the said John Moore to the said Charles Barnitz, or be received out of the proceeds of the said John Moore's real and personal estate, I will then make good to the said Charles Barnitz the whole of the sum of $1000, or any part thereof which may not be paid by the said John Moore, or received out of his real and personal estate. In testimony whereof, I have hereunto set my hand and seal, this 10th May 1843.

[Signed]            N. W. WOODS."

It appeared in proof that N. W. Woods was now insolvent.

The court below was of opinion that the judgment of Charles Barnitz should be paid out of the money which was payable to the mortgage of N. W. Woods, in preference to the assignment to William Moore, and decreed that the same should be paid to him. From this decree William Moore appealed; and from the decree of the court ordering the payment of the Southern Loan Co.'s judgment, Charles Barnitz appealed, as did also Holcomb and Seevers.

*Biddle* and *Reed*, for Barnitz, Holcomb and Seevers, argued that when Barnitz took his judgment against John Moore, he did it under the influence of the guaranty of N. W. Woods, whose mortgage against John Moore was then on record, and upon the faith of which he parted with the consideration of the judgment, believing as he did upon the authority of *Erb's Appeal*, (2 *Penn. Rep.* 296), and *Himes* v. *Barnitz*, (8 *Watts* 45), that N. W. Woods would not in the face of his guaranty be permitted to take the money out of court, to the exclusion of his judgment. It was also contended for Holcomb and Seevers that the conduct of the

sheriff, and the facts proved in relation to the amount of personal property of John Moore which was in the power of the sheriff while the execution was in his hands and in full life, and part of which had actually passed through his hands, should postpone the judgment of the Southern Loan Co. to subsequent judgments; and on this point Mr Reed cited 3 *Watts & Serg.* 285; 7 *Law Lib.* 143-6. 136-7; 5 *Watts* 300.

*Graham* and *Watts,* for appellant William Moore and for appellees, argued that the principle was clearly settled that the misconduct, fraud or negligence of the sheriff could not prejudice the claim of an execution creditor; and, therefore, conceding that the personal property of John Moore, if levied, would have been abundantly sufficient to have paid the judgment of the Southern Loan Co., yet, as it was not levied, it was the fault of the officer, which cannot be visited upon the plaintiff. 5 *Watts* 300. But it was a clear misapprehension of all equitable principles to give a right to C. Barnitz over Wm Moore to have his money out of the mortgage of N. W. Woods. The decision amounts to this, that a mortgagee who has an outstanding liability in favour of a creditor of the mortgagor, has no power to assign his mortgage; and if he do, the assignee who can have no notice of it will take nothing by his assignment. Under the circumstances of this case, what better equity could Barnitz have than Wm Moore? Granting they are both creditors of Woods, the one gets an actual assignment of the mortgage in payment of his debt; the other has an obligation in his pocket. But the case is still stronger; for William Moore's is the debt of Woods, in the other he is alleged to be the surety of John Moore. This case is not at all like the case of *Himes* v. *Barnitz,* for there Barnitz, when he took the assignment of the judgment, had actual notice of all the circumstances attending it.

The opinion of the Court was delivered by

KENNEDY, J.—The first exception taken by the appellants to the decree of the court below is, that the court erred in ordering the several judgments against John Moore in favour of the Cumberland Valley Rail-road Co., the Southern Loan Co. and the Carlisle Savings Fund, respectively, to be paid out of the moneys in court arising from the sale of the real estate of John Moore, as subsisting liens thereon from their respective dates. Writs of *fieri facias* had been sued out on these judgments against John Moore when he was possessed of personal property, and engaged in manufacturing iron pretty largely within the county; and it was alleged that the sheriff, in whose hands these writs were placed for execution, had seized and taken by virtue thereof personal property of Mr Moore sufficient to satisfy the same, and if the plaintiffs therein respectively had not received payment, it was because

they had neglected to look to the sheriff for it, who had made himself accountable to them.   The appellants, however, failed to show any such seizure of personal property; and although they gave evidence tending to prove in some degree that the sheriff, by great vigilance on his part, might possibly have gotten personal property of the defendant named in the executions sufficient to have satisfied the several amounts thereof, yet the neglect of the sheriff in this respect, however gross and clearly proved, could not affect or destroy the liens of the several judgments in favour of the Cumberland Valley Rail-road Co., the Southern Loan Co. and the Carlisle Savings Fund, upon the real estate of the defendant, Mr Moore.   The liens of their judgments, therefore, remained in full force, and, being prior in point of time to the liens of the mortgage taken by N. Wilson Woods, as also of the mortgage taken by William Moore, and the several judgments obtained by the other appellants against John Moore, the court were right in giving the former a preference.

But William Moore, one of the appellants, also further complains that the court erred in decreeing that the judgment in favour of Charles Barnitz, another of the appellants, against John Moore, should be paid out of the moneys due on the mortgage of N. Wilson Woods, in preference to $2450 of the same mortgage which had been assigned to him by the said N. W. Woods.   The mortgage was executed and recorded on the 8th day of May 1843, and the judgment was obtained by Charles Barnitz against John Moore two days afterwards, to wit, on the 10th of the same month, for $1000; and on the 23d day of December following, 1843, N. Wilson Woods assigned $2450 of his mortgage to William Moore. But previously to this, on the 10th of May preceding, the same day that Charles Barnitz obtained his judgment against John Moore, N. Wilson Woods signed an agreement in the following words :

"Whereas, John Moore has this day confessed an amicable judgment to Charles Barnitz for the sum of $1000, payable six months after date, and for the better securing the said Charles Barnitz, I do hereby agree and covenant that in case the said judgment shall not be paid by the said John Moore to the said Charles Barnitz, or be received out of the proceeds of the said John Moore's real and personal estate, I will then make good to the said Charles Barnitz the whole of the sum of $1000, or any part thereof which may not be paid by the said John Moore, or received out of his real and personal estate. In testimony whereof I have hereunto set my hand and seal, this 10th May 1843.

[Signed, but not sealed]                    N. W. Woods."

Barnitz not having received or been paid in any way any part of his judgment against Moore, and it appearing that Moore and N. W. Woods were both insolvent, therefore claimed by force of

the guaranty just recited to be paid the amount of his judgment out of the moneys secured by the mortgage given to N. W. Woods. This was opposed by William Moore, inasmuch as it would go to preclude him from receiving the amount claimed by him under the assignment made to him. The court, however, conceiving that Barnitz was entitled to a preference, decreed in his favour.

The court seem to have thought that the claim of Charles Barnitz came within the principle acted upon by this court in the cases of *Erb's Appeal*, (2 *Penn. Rep.* 296), and *Himes* v. *Barnitz*, (8 *Watts* 39). Each of these cases, it may be observed, was attended with circumstances different from the present; and in *Himes* v. *Barnitz* the application of the principle was, perhaps, carried to its utmost limit. In *Erb's Appeal*, Orr was held entitled to be paid his judgment against B. M'Cormick, and Mary Moore as surety of M'Cormick, out of the moneys raised from a judicial sale of M'Cormick's real estate, in preference to a prior judgment in favour of John Martin, which had been assigned to Mary Moore, and by her assigned to Christian Erb, the appellant, after the money had been made, first, upon the ground that Mary Moore, the surety of M'Cormick, had in reality obtained the assignment of Martin's judgment against M'Cormick, in consideration of her having joined M'Cormick as his surety in giving a new judgment to Andrew J. Dearmond, which included, by the consent of Martin, the judgment in his favour, and was actually satisfied afterwards by a seizure and sale, under an execution issued upon it, of personal property belonging to B. M'Cormick, and property belonging in some small part to Mary Moore, but chiefly with property which she had received as an indemnity for her having become surety in the judgment to Orr, who claimed, therefore, to be paid the amount thereof out of the moneys arising from the sale of the real estate of M'Cormick, the real debtor, seeing nothing was actually due, or at least very little, on the elder judgment in favour of Martin, which it was agreed Mary Moore should have the benefit of at the time she became surety for M'Cormick; and, secondly, upon the ground, so far as she had become the real owner of the elder judgment in favour of Martin against B. M'Cormick, that her right thereto was acquired as an indemnity for having become surety in the judgment given to Orr, and Orr, therefore, became entitled to claim the benefit of it, on the principle of equity, which seems to be well settled, that the creditor is entitled to the benefit of all securities the principal debtor has given to his surety, as well as those which shall have been given to the creditor himself by the principal. *Maure* v. *Harrison*, (1 *Eq. Cas. Abr.* 93); *Wright* v. *Morley*, (11 *Vez.* 22); *Scribner* v. *Hickok*, (4 *Johns. Ch. Rep.* 530); *Ib.*130. And in the second of the cases relied on by the court below, Mrs M'Clure, who was a judgment creditor of Peter Ege, the principal debtor, was held entitled to be paid the amount of her judgment out of

[Moore's Appeal.]

the proceeds of the real estate of Peter Ege, which had been taken in execution and sold by the sheriff, in preference to two elder judgments, originally in favour of the executors of Michael Ege, but assigned by them to Joseph A. and Michael P. Ege, who had undertaken to pay Mrs M'Clure's judgment, in consideration of which they had put into their possession, as owners, the personal property of, and claims for money coming from the executors of Michael Ege to Peter Ege, the principal debtor, as an indemnity; and by means thereof, in settling the claims of Peter Ege against the estate of Michael Ege with his executors, obtained the assignment of the two elder judgments against Peter Ege, which they assigned afterwards to Charles Barnitz, with a full knowledge on his part of all the circumstances connected with their becoming the assigns thereof, who notwithstanding claimed to be paid the amount of the same under the assignment to him. The circumstances of this latter case, though somewhat complex, will be found, when properly scanned, to present in substance the case in which Joseph A. and Michael P. Ege had become the sureties of Peter Ege, the principal debtor, for the payment of Mrs M'Clure's judgment against him, and by means of the property and claims placed in their hands by Peter Ege, the principal debtor, as an indemnity in effect, and to enable them to fulfil their promise of suretyship to Mrs M'Clure, they obtained the assignment of the two elder judgments against the principal debtor, which they afterwards assigned to Mr Barnitz without paying Mrs M'Clure. Under this view of the case, it would seem to be right that Mrs M'Clure, according to the rule in equity mentioned above, being the judgment creditor of Peter Ege, for whom Joseph A. Ege and Michael P. Ege had become bound as sureties to pay her the amount of her judgment, should be considered as entitled to the benefit of the two elder judgments against Peter Ege, the principal debtor, which they had got an assignment of by means of the property and claims placed in their hands by Peter Ege as an indemnity; and this would seem to be right even against Mr Barnitz, notwithstanding he had taken an assignment of them for valuable consideration, seeing he did so with full knowledge of the means by which his assignors acquired their right.

But in the case before us, Charles Barnitz claims the benefit of the mortgage given to N. Wilson Woods before the latter undertook to pay the debt, in a certain event, owing by John Moore to C. Barnitz, and without any view or reference to such future suretyship. The mortgage was given by J. Moore and accepted by N. W. Woods for purposes altogether different from and wholly unconnected with any debt which J. Moore might have owed Charles Barnitz at the time. It is therefore clear that Charles Barnitz cannot claim to have the benefit of it on the ground that it was taken of John Moore by N. Wilson Woods as an indemnity or security for or against paying the debt of Moore to Barnitz.

Had it been, it would have fallen within the principle acted upon in *Erb's Appeal* and *Himes* v. *Barnitz*. But any specialty or even simple contract creditor of John Moore, where N. W. Woods had become surety for the payment of the debt, though no judgment had been obtained for the recovery of it against either the principal or the surety, might as well claim to have the benefit of the mortgage taken by N. W. Woods, as C. Barnitz in this case. If Charles Barnitz had had a judgment against N. Wilson Woods for the debt owing to him by John Moore, and it had been shown that nothing could be got of Woods to satisfy it upon an execution issued against him, then possibly the court might have interposed and directed it to be paid out of the money coming to N. W. Woods on the mortgage, provided it would not have been prejudicial to the other sureties or creditors of John Moore named in the mortgage, and N. W. Woods had not parted with all his right thereto for a valuable consideration. But I do not see well how the court could interfere to defeat the right of a *bonâ fide* assignee for a valuable consideration, seeing Charles Barnitz had no judgment against N. W. Woods for the debt owing to him by John Moore, or lien of any sort upon the fund in court; in short, nothing except a promise in writing without seal, and without even stating any consideration whatever for it. In no instance of the kind, I apprehend, did a court ever interpose and direct the money of the promisor in court to be paid to the promisee without consent. Mutual judgments between the same parties may doubtless be set-off against each other by the court in the exercise of its equitable powers; but to permit the money of N. W. Woods, which is in court, to be taken out by C. Barnitz, because he says that N. W. Woods is indebted to him upon his promise, which is the most favourable aspect that the present case can be presented in for C. Barnitz, has never been and I think cannot be allowed by the court.

It only remains to say whether the assignment by *N. W. Woods* to William Moore of the $2450 due on the mortgage is not good against the claim of Charles Barnitz; and we think it is. As against Mr Barnitz, we see no reason why N. Wilson Woods could not have assigned and disposed of all his interest in the mortgage to whomsoever he pleased for a valuable consideration. It is clear Mr Barnitz had no lien upon or connection whatever with it, either in law or equity, to prevent his doing so.

The decree of the court below, as far as it is in favour of Charles Barnitz, is reversed, and the $2450 of the mortgage money assigned to William Moore ordered and decreed to be paid to him out of the money in court; the residue of the decree is affirmed, and the costs of the appeal, together with the previous proceedings, directed to be paid by the appellants who have failed to prosecute the same with success.