# THE SUPREME COURT

OF

# PENNSYLVANIA.

NORTHERN DISTRICT—SUNBURY, 1874.

77 243
'173 516
77 243
184 417

## Datesman's Appeal.

1. Heckel recovered judgment against William ; afterwards Martin recovered a judgment against William & Heckel, as partners, who became insolvent ; Heckel afterwards assigned his judgment to John as collateral ; William's separate real estate was sold by the sheriff; in the distribution of the proceeds of sale, *held*, Martin was to be paid on his judgment, in preference to John on Heckel's judgment assigned to him.

2. John took Heckel's judgment subject to every disability and equity which would have affected Heckel.

3. Martin's judgment was defectively indexed ; if that gave precedence to liens subsequent to it, although Heckel's judgment would take in preference to these liens, it could not be benefited by the disability of Martin's judgment as to them, so as to claim the fund.

4. Erb's Appeal, 2 Penna. R. 296 ; Himes *v.* Barnitz, 8 Watts 39 ; Huston's Appeal, 19 P. F. Smith 485, followed.

January 27th 1875. At Philadelphia. Before AGNEW, C. J., SHARSWOOD, WILLIAMS, GORDON, PAXSON and WOODWARD, JJ.

Appeal from the Court of Common Pleas of *Northumberland county :* Of September Term 1874, No. 12. In the distribution of the proceeds of the sheriff's sale of the joint real estate of William P. Datesman and John Heckel, and of the separate real estate of W. P. Datesman.

About April 1866, William P. Datesman and John Heckel, who were partners in business, became owners as tenants in common of real estate in the village of Dewart, in Northumberland county.

(243)

Datesman owned as his individual property other real estate in the same place.

Several judgments had been entered against them previously to June 26th 1871. On that day a judgment for $1726.71 was entered in favor of John Heckel against William P. Datesman. On the 4th of July 1871, a judgment for $206.03 was entered in favor of Goodman & Brother against W. P. Datesman and John Heckel.

On the 21st of October 1871, a judgment for $698 was entered in favor of Terret & Martin against "Datesman & Heckel"; in the entry of this judgment in the judgment-docket and the index, the names of the defendants so appear, their first names not being given. On the 9th of July 1872, Datesman & Heckel having become insolvent, made an assignment of all the estate, real and personal, * * * held by them as tenants in common or copartnership, and all their rights, credits and expectations of whatsoever nature or kind, for the benefit of their creditors; on the 31st of July 1872, a judgment for $500 was entered in favor of John Datesman against W. P. Datesman. On the 1st of August 1872, John Heckel assigned to John Datesman his judgment for $1726.71, above mentioned, against W. P. Datesman, as collateral security for a pre-existing debt. On the 14th of August a judgment for $1000, in favor of Mary M. Datesman, was entered against W. P. Datesman.

Under judgments of earlier dates than those above mentioned, the real estate of the partners, and the separate real estate of W. P. Datesman, were sold by the sheriff. The proceeds of sale were brought into court and referred to William C. Lawson, Esq., as auditor, to report distribution.

The auditor decided that the assignment of the partners for the benefit of their creditors passed only the property held by them in common.

He also found that the proceeds of the joint real estate had been exhausted by liens prior to the judgment of Heckel against W. P. Datesman assigned to John Datesman; that judgment, if to be paid at all, must be paid out of the separate estate of W. P. Datesman, and that it was not affected by the assignment of the partners for the benefit of their creditors.

He reported, excluding the judgments of Goodman & Brother and Terret & Martin from the distribution; he found that the proceeds of the separate estate of W. P. Datesman amounted to $1973.62, of which he awarded $1298.94 to John Datesman on the Heckel judgment.

Terret & Martin excepted to the report of the auditor, alleging that the money distributed to the Heckel judgment should have been awarded to them "by virtue of an equity arising out of the fact of their holding a subsequent judgment against Heckel." The

report was recommitted to the auditor to pass upon the exception. He reported that as the exceptors' judgment had been entered against " Datesman & Heckel, not against W. P. Datesman, * * * their judgment is postponed to all the judgments against W. P. Datesman, which are properly indexed and were without notice."

As to the claim that they should be paid out of the fund because they held a judgment against Datesman & Heckel, after referring to the cases—Erb's Appeal, 2 Penna. R. 296 ; Himes v. Barnitz, 8 Watts 39, and Worrall's Appeal, 5 Wright 524—he said : " These cases determine nothing beyond this, that in the appropriation of the proceeds of a sheriff's sale, though a party claimant has a prior judgment, yet, if insolvent, he shall not take the money raised to the prejudice of a subsequent judgment-creditor to whom he is bound as surety for the payment of his judgment. The subsequent creditor must be a *judgment-creditor*, and must take the funds by virtue of his own lien and preference, and not by any substitution to the rights of the prior judgment, which is merely postponed by the equity indicated in the cases, to his own equity. * * * It is certainly not an equity which all the creditors of the prior judgment-creditor can assert, and it is almost equally certain that it is not one which his judgment-creditors, as such, can avail themselves of. It is only operative where the junior judgment-creditor holds the prior judgment-creditor and debtor both bound. Now, in the case before us there are three judgments of that kind—Goodman & Brother, Terret & Martin and J. H. Harley. If their equity is wrought out by substitution, then they would all be equally entitled, whatever their position on the record, to their share of the moneys coming to No. 538, for they all bear the same equality of relation to the senior judgment-creditor. But, from the review, we are satisfied that whatever their equity is, it is only operative and wrought out through their respective lien standings toward the property of the defendant; that is, they take, if they have a valid lien, according to the priority of their lien. They must have a lien on the property sold, or they have no equity to assert. The equity can arise no earlier than the date of their respective liens, properly entered and indexed on the records. * * * Goodman & Brother obtained a judgment against John Heckel and Wm. P. Datesman on the 4th of July 1871, for the sum of $206.03. If the auditor is correct in ruling that their equity to the moneys arising from the sale in court commenced at the rendition and proper entry of their judgment, then they could not be affected by the subsequent assignment to John Datesman of Heckel's judgment ; and John Datesman took his assignment subject to their equities, and they must be paid in preference to his assignment out of the funds in court for distribution. Then comes Terret & Martin v. Datesman & Heckel. If this judgment had been properly entered and indexed against the individuals, it must have followed Goodman

[Datesman's Appeal.]

& Brother in its realization out of the funds for distribution. But as it was entered, stood and now stands, it is no notice to a subsequent purchaser or judgment-creditor of any judgment or claim whatever against William P. Datesman.

" If the auditor is correct in his ruling, that the peculiar equity established under the facts of this case did not arise until the subsequent or junior judgment-creditor had placed himself properly on the record, then John Datesman, having taken an assignment of Heckel's judgment before the equity of Terret & Martin arose, the money must be distributed to him.

" Or, on the other hand, if the equity of Terret & Martin arose from the rendition of their judgment against Datesman & Heckel, which the auditor has decided negatively, then John Datesman took the assignment of the 1st of August 1872 without any notice of the equity of Terret & Martin, and their equity, if they had one, must be postponed to the assignment of John Datesman." * * *

The auditor corrected his former distribution by awarding to Goodman & Brother the amount due on their judgment, and the remainder, after deducting costs, &c., being $1043.22, he awarded to John Datesman on the Heckel judgment, still excluding the judgment of Terret & Martin.

Terret & Martin filed exceptions to this report : that the auditor had awarded the whole of the sum of $1043.22 to John Datesman on the Heckel judgment, and had not awarded to them the amount of their judgment, to wit, $698 with interest.

The court (Rockefeller, P. J.) sustained the exception, and decreed to Terret & Martin the amount of their judgment, and the balance to John Datesman on the Heckel judgment.

John Datesman appealed to the Supreme Court.

He assigned for error :—

1, 2. That the court erred in awarding the balance of the fund to him, as assigned on the Heckel judgment, and awarding any part of it to Terret & Martin.

4. Terret & Martin's judgment was entered against " Datesman & Heckel," and must therefore be postponed to all subsequent judgments against W. P. Datesman individually, especially the judgment entered against him July 31st 1872, in favor of John Datesman.

5. Terret & Martin's judgment being postponed by the rules of law relating to the rights of subsequent lien-creditors, and no other judgment having been entered against W. P. Datesman prior to the assignment of Heckel's judgment to John Datesman, the court erred in not decreeing the fund to him.

6. If John Datesman is not entitled to the fund as assignee of Heckel, he is entitled to a portion of it as a subsequent lien-creditor of W. P. Datesman, under his judgment of July 31st 1872.

*F. Bound* and *J. W. Comly*, for appellant.—As to the right of appellant on the assignment of Heckel's judgment over Terret & Martin, they cited Harrisburg Bank *v.* German, 3 Barr 300. The indexing of Terret & Martin's judgment was not proper, and was therefore postponed to subsequent liens: Smith's Appeal, 11 Wright 129; Ridgway's Appeal, 3 Harris 177. They argued also that, although the subsequent-lien creditors would, by reason of the defective entering, &c., of Terret & Martin's judgment, take in preference to that judgment, yet that judgment being out of the way, and the Heckel judgment being superior to these subsequent liens, it would take in preference to them, and the fund therefore should be awarded to that judgment.

*C. Hower* (with whom was *O. Faust*), for appellees.—The judgment of Terret & Martin was a lien on W. P. Datesman's separate estate, and entitled to priority over subsequent liens in distributing the proceeds of its sale: York Bank's Appeal, 12 Casey 458; Cummings' Appeal, 1 Id. 268. The appellant took the assignment of the Heckel judgment subject to all equities then subsisting between Heckel and others: Himes *v.* Barnitz, 8 Watts 39. The money could not be paid to Heckel whilst he was indebted to Terret & Martin on their judgment: Kyner *v.* Kyner, 6 Watts 221; Cottrell's Appeal, 11 Harris 294; Vierheller's Appeal, 12 Id. 105. A prior execution-creditor, if insolvent, cannot receive the fund in preference to a subsequent execution-creditor, to whom he was a surety for the debtor: Worrall's Appeal, 5 Wright 524; Erb's Appeal, 2 Penna. R. 296; Winter *v.* Ludlow, 3 Phila. R. 464; Houseal's Appeal, 9 Wright 484; Mifflin *v.* Rasey, 3 Rawle 483; Neff *v.* Miller, 8 Barr 347; Huston's Appeal, 19 P. F. Smith 485.

Mr. Justice WOODWARD delivered the opinion of the court, February 15th 1875.

The essential inquiry here is, whether the sum of $698, with interest and costs, was properly appropriated to the judgment of Terret & Martin against Datesman & Heckel by the court below. A fund had been realized from the sales of the joint property of William P. Datesman and John Heckel, and the separate property of W. P. Datesman. This had been distributed to joint and separate creditors in a manner that has not been made the subject of any complaint. There remained the sum of $1043.71, which was made up entirely of proceeds of the sales of the separate property of W. P. Datesman. This was claimed by the appellant, John Datesman, as assignee of the judgment of John Heckel against W. P. Datesman, for $1726.71. This had been entered on the 26th of June 1871, and been assigned as collateral security on the 1st of August 1872. It was claimed also by

[Datesman's Appeal.]

Terret & Martin on a judgment against Datesman & Heckel—
W. P. Datesman and John Heckel—for $698, which had been
entered on the 21st of October 1871. The auditor gave the entire
balance to John Datesman on the Heckel judgment. The court
reversed the report, and appropriated as much of the fund as was
necessary to satisfy their judgment to Terret & Martin.

It appeared by the record that W. P. Datesman and Heckel
became insolvent as early as the 9th of July 1872. It was not
until after that time that Heckel assigned his judgment to John
Datesman. When the latter took it he became subject to every
equity and disability which would have affected Heckel. He was
the assignee of a chose in action ten months after the insolvency
of Heckel had been ascertained. He was not a purchaser for a
valuable consideration, for he had received it as collateral security.
The case was precisely one for the application of the rule laid down
by Judge Sergeant in Himes *v.* Barnitz, 8 Watts 39. The rights
of the appellant, then, being only those which his assignor could
have asserted, what would have been Heckel's own position in re-
lation to this fund? He was a debtor of Terret & Martin in a
judgment next of record to his own. The law could not tolerate
the wrong that would have been involved in permitting an insol-
vent debtor to retain money raised by a judicial sale, to the direct
exclusion of his judgment-creditor. He and W. P. Datesman had
been partners. The money had been raised by his partner's pro-
perty, and he and his partner were joint defendants in the judg-
ment of the appellees. To permit him to retain this money on his
lien would violate long-settled principles of equity, which are the
foundation of the entire practice of substitution and subrogation.
It was decided in Worrall's Appeal, 5 Wright 524, that though a
claimant to the proceeds of a sheriff's sale of the personal property
of his debtor has the prior execution, he cannot, by virtue thereof,
if insolvent, receive the fund to the prejudice of a subsequent exe-
cution-creditor, for whose claim he was bound as the surety of the
debtor, but the proceeds will be appropriated to the latter claimant.
Erb's Appeal, 2 Penna. R. 296, and Himes *v.* Barnitz, *supra*,
were relied on as authority for Worrall's Appeal, and the judge
who delivered the opinion of the court, said : " The fund for dis-
tribution in those cases arose from sales of real estate ; in this case
the fund is raised from personalty, but this circumstance cannot
affect the application of the equitable principle which forbids a
joint debtor, who is insolvent, to divert a fund from a creditor to
whom he owes it, into his own irresponsible pocket." The current
of authority in this direction has been unbroken since Erb's Ap-
peal, except in the case of The Harrisburg Bank *v.* German, 3
Barr 303, and that is shown by the opinion of Judge Williams in
Huston's Appeal, 19 P. F. Smith 485, to have been overruled.

But it is urged on behalf of the appellant, that the decree should

be reversed, because the judgment of Terret & Martin, though next to that of Heckel in the order of time, is not next in the order of lien. The ground is taken that it was so defectively indexed, that, as between them and John Datesman and Mary M. Datesman, the plaintiffs in the two following judgments, the latter would be preferred in the distribution. The firm name of Datesman & Heckel was only entered in the index of the Terret & Martin judgment, and the argument is, that when the fund reached that, it was subject to a defect that was fatal; that, as to it, the latter judgments would take; that the controversy was thus reduced to one in which the holder of the Heckel judgment and the plaintiffs in the later judgments were the only parties; and that, as between them, no question of lien and no question of substitution could arise, the Heckel judgment was entitled to the fund.

It would be difficult to find any recognised legal rule to justify the appellant in thus reaching forward to assert a disability in favor of the plaintiffs in the later judgments, in order to create a fresh contest between the latter and himself. But the fallacy of the view presented on his behalf is shown by the consideration that the money was intercepted by the lien of the Heckel judgment when . that was reached, and that, as a subject for legal distribution, it never reached the judgment of Terret & Martin at all. At that point all disputes in relation to the order of distribution and the applications of liens, were arrested and closed. So far as principles of law were concerned, the appropriation was made to the Heckel judgment. The only issue left was, whether the appellant should take the fund by virtue of the legal lien which had grasped it, or it should go, on principles of equity, to the judgment-creditors of an insolvent debtor. The defect in the index was not one which could be made the foundation of a contest between these parties; and as to the later judgments of John and Mary M. Datesman, the fund was gone. They could set up no legal claim, and certainly their intervention cannot be invoked in a controversy in which Terret & Martin are pursuing their demand against Heckel, on the equitable grounds on which the right of subrogation and substitution rests, irrespective of any right of contract or any law of lien.

Decree affirmed at the costs of the appellant.