Duncan J.
delivered the opinion of the Court..
The judgment confessed by the administrators of Philip Nicklin, in the life time of the testator, and the subsequent confessions of judgment on scire facias, are admissions of assets to the amount of this debt. So long as these judgments stand unreversed, this is incontrovertible. The whole rests on the solution of one question of law, and the application of one principle of equity. The legal question is, did the plaintiff receive payment in fact, or satisfaction by operation of law ? If the evidence offered did not tend to prove this, would the relation in which the parties stand to each other, form such a ground for equitable relief, that a Court of chancery would enjoin the plaintiff below, the defendant in error, from recovery ? For if it is a cause calling on a Court of chancery to interpose, our common law Courts can and ought to accomplish the same end, under the plea of payment, with leave to give the special matters in evidence; for equity is part of our common law, and our Courts, from the earliest period, have constantly exercised chancery powers from necessity, lest there should be a failure of justice ; and it is a maxim in our jurisprudence to consider that to have been done, which equity would compel, and which good conscience requires should be done, and on this basis rests the whole doctrine of equitable ejectment, and all our laws as to trust estates. Rules of Court, corresponding with this, have been framed. In debt on bond, where the parties would be forced into a Court of chancery, under the plea of payment, with leave to give the special matter in evidence, every equitable circumstance, every thing which will go to shew that in con - *26 science the defendant ought not to be charged, may be shewn? an(j the jury directed to presume every thing to have been paid,' which ex cequo et bono ought not to be paid. But this r , . r assumption or equitable jurisdiction, is not, as some have most err°neously supposed, the exercise of a wild discretion in each particular case, ungoverned by any rule and without any plan, depending on the caprice of any twelve jurors, dráwn.by lot, and empannelled in a jury box, Jo decide according to their own conceptions of equity, by a crooked descretion ex re nata; but a sober, well understood, uniform system, governed by chancery rules, attaining the same end in substance, though not in mode. The relief, the manner, and the extent, are matters of law for the Court, as much as any matter at the common law ; the jury are confined to the province of the fact; the Court exercising the judicial functions of a Chancellor, by the instrumentality of a jury. Nor is it any objection that the Court cannot in all cases grant equitable relief: Because they cannot do every thing, is a bad reason for their not doing any thing.
Executors and administrators are trustees, and it would be matter of regret if the powers of the Court were incompetent to compel the fulfilment of their trust. It was the opinion of a most inflexible adherent to the course of the common law, administering justice in that form, that decisions of Courts of equity, on the powers and duties of executors and administrators, were to be regarded in the Courts of common law ; but it appears to me that if the facts offered to be proved by the plaintiff in error, had been the put into form of a special plea on the record, and the defendant had demurred to it, judgment must have passed against him.
The testator knowing that the plaintiff below was one of the administrators of Philip Nic/ilin, for he had proceeded against him as such, and rendered him personally liable by his judgment for this debt, constitutes him by his will one of his executors. It then stands precisely as if the testator had become the administrator of Mr. Nicklin. This is the first ground, and if so, it is uncontroverted law, of a standing of many centuries, that where two are jointly and severally bound, as here, and the obligee takes out administration on one, he cannot sue the other. A succession of cases from 21 E. 4.8. (in the year book) down to the present day, will be found clearly *27 establishing this principle of discharge. That case was, thus: Copley, Prothonatory, asked of Brian Chief Justice, if three be bound in an obligation to a man, jointly and severally, and the obligee make one of the obligors his executor, and die, whether he who is made executor, shall have his action against any of the others; and Brian said, that he should not, for i£ one was discharged all shall be, because making one of them executor, is as perfect a discharge in law, as if he had released to one in deed. — Copley ; Sir, the obligation is several. Brian ; This does not matter, for a recovery against one, and execution sued, will discharge the other. The reason is a good one: there is but one duty extending to both obligors, and therefore it was pointedly put by Brian, that a discharge of one or satisfaction made by one, discharges the other. Hutt. 128, cites Trugeon v. Meron. Garret Trugeon, plaifltiff, against Anthony Meron and others, administrators of Benjamin Scriven, on a single bill. The defendants demand oyer of the bill, whereby it appears that one John Scneacks was jointly and severally bound with Scriven. The defendants said that the said Scneacks died intestate, and that administration of his goods was granted to the plaintiff, who accepted the burden and administered. The plaintiff demurred and judgment against the plaintiff. I can see no difference between this case and the one before us. So Dorchester v. Webb, Cro. Car. 372: The defendant pleaded that John Dorchester, late husband to the said Anne, and the said William Webb was bound jointly and severally to Anne Rowe, and that the said John Dorchester died, and made the said Anne, his wife^ the now plaintiff, and the said Anne Rowe, the obligee, his executrixes, and that the said Anne Rowe renounced, and the said Anne Dorchester administered, and that assets to pay the debt came to plaintiff’s hands. The plaintiff replied, that before the death of the said Anne Rowe, she had administered fully all the goods of John Dorchester: demurrer, and judgment for plaintiff; for this reason, that she having fully administered all the goods of John Dorchester, and not being chargeable-to that debt as executrix-of John Dorchester, may as executrix of Ann Rowe, maintain this action against Webb, the other obligee. But here the plaintiff offered to prove the assets. To the same purpose is Fryer v. Gildridge, Hob. 10. if A. and B. are bound in an obligation jointly and severally to C., and C. makes D. the wife *28 of A. his executrix and dies, D. administers, and afterwards* A. the baron of D. makes D. his executrix and dies, leaving sufficient assets to pay the debt, and afterwards D. dies and .E. takes out administration of the goods of C. unadministered; yet he cannot have his action against B., the other obligor, because when the obligor made the executrix of the obligee his executrix, and left assets, the debt was immediately satisfied by way of retainer. In Freeman’s Rep. 49. Pl. 59, A. and B. are obliged to C. A. makes D. his executor and dies; D. makes C. his executor and dies. A. sues B. for the debt; B. pleads the matter aforesaid, and says that diversa bona et catalla of A., the first testator, came to the hands of C.-, but it was ruled against him, because he did not say ad valorem debiti, and perhaps the goods were not of the value of six cents. The same principle is decided in Thomas v. Thompson’s administrators, 2 Johns. 475. 477. but there put on the footing of ex-tinguishment. ■ But I rest this case on payment and satisfaction, for the.law will not allow the plaintiff below to refuse to reap that satisfaction which he has already received from one obligor, without discharging the other. The reasoning of Holt Chief Justice, in Wankford v. Wankford, 1 Salk. 305, is unanswerable. “ If the obligee makes the obligor or the executor of the obligor his executor, this alone is no extinguishment, though there be the same hand to receive and pay; but if the executor has assets, it is, becaus'e that is within the rule, that the person who is to receive the money is the person who ought to pay it; but if he has no assets, then he is not the person to pay, though he is the person who is to receive; and to that purpose is, 11 H. 4. 83. And the case of Dorchester v. Webb, Cro. Car. 372, 1 Jones, 345, where the obligee makes the executrix of one of the obligors his executrix, who has no assets, this is no discharge of the debt, because though this executrix, as executrix of the obligee, is the person to receive, yet having no assets of the obligor, he is not the person who ought to pay. But if the executor of the obligee is made one of the executors of the obligor, and has assets of the obligor, the debt is extinct, for the having assets •amounts to payment. So was it determined in Lock v. Cross, where the obligee was made executor of one of the obligors, and in an action by him against the other, where this was pleaded, the plea was held naught, because he did not shew *29 to what amount the assets were that he had administered; but ' if the defendants had shewn that he had administered goods to the value of the debt, it had been a good plea.
According to the opinion of Holt, the having assets amounts to payment. The right to retain, in the case from Hobart, is satisfaction. The executor’s right to retain for his own debt, is founded principally on this, — that he cannot sue himself. The executor having the right thus to apply the assets, they are by operation of law applied to payment. It is the presumption of law and equity,-that one having the fight to retain, does retain; it requires no election. A. lent money to B. on bond, who died intestate. C. took out administration to him; after which C. dying, A. took out letters de bonis non to B. It was determined, that out of the assets, A. might retain; and though A. happened to die before he made- his election-in what particular effects he would have the property altered, yet the Court said it must be presumed, that he would elect to have his own debt paid first; and this being presumed, there would remain no difficulty as to the alteration of the property ; for as the executors of A. were to account for the assets of B., they must in their account deduct the amount of the money lent by A. to B. Weeks v. Gore, 3 P. Wms. 184.(note). So here, Mr. Chew, as administrator of Mr. Nicklin, would be allowed, in-his administration account, the amount of this judgment. This case-falls within the opinion of the Court, in Thomas v. Thompson, which, was, that as the defendant, the administratrix of the debtor, was personally liable for the judgment, at the time she was appointed executrix of the.creditor, in the event of the failure of assets, she was, for that reason, discharged and released by this appointment, by the judgment creditor.
There is no person who can enforce the judgment. ■ It was. the voluntary act of the creditor, — a voluntary suspension of the remedy, which is thus, forever, lost and gone. . The avowed object is to compel Griffith to pay this debt, and to come on Nickllrds estate as a simple contract creditor. This may proceed from the purest motives. To put all the creiditors on a footing of equality,- is a very -specious equity, and in most cases is substantial justice ; for priority of payment, the grade and order, are very artificial and technical; but when positive law has established the order, and not *30 vested in the executor or administrator any power to prefer, it cannot depend on his volition, whether the debt shall remain as it stood at the death of the debtor, or for some purpose of his representative, be changed into simple contract, and swallowed up in the vortex of claims of that description. The order of payment of debts of a deceased, is to be according to the nature of his debts, as they existed at the time of his death. I do not sensibly feel that kind of equity, which was so much pressed on the Court, — the equity of compelling Griffith to pay beyond his due proportion of this debt, in order that the meritorious creditors on simple contract of his co-obligor may not go altogether unpaid, —that he should furnish the fund for the purpose, and come in upon his own fund for a dividend with them. No man should be suffered to use his right, so as to prejudice the rights of others. Sic utere tuo, ut alienum non ¿cedas, is the golden rule of the law. In a case like this, there is a legal obligation on Philip Nzcklhi’s administrator to retain; it was his duty on all sides ; to the estate of which he was executor, to that of which he was administrator, and to Mr. Griffith. All this is, however, foreign to the doctrine of devastavit. Griffith is not a creditor. Mr. Chew would be both debtor and creditor. As executor of Mr. Chew, he is a creditor to the amount of the debt, and as Nicklin’s administrator, would stand debtor to that amount. He has received it; he has it in his hands; but he is relieved from that awkward state by the laws considering that' the debt due to the testator is paid, and the debt due by the intestate paid, by the simplest of all operations, considering that to have been done, which the law requires should be done, — which a Court of law would consider as done; and without so considering it, justice could not be done to either estate ; for the estate of the testator would never compel payment; the executor of the creditor’s will is the personal debtor, by reason of the judgment and admission of assets, and it is only by supposing that hé has actually received the debt, that it is so much money had and received for those entitled under the will, that it can be come at in a Court of law. He cannot sue himself. So universal is this principle, that partners in one house of trade cannot maintain an action against partners in another house of trade, of which one of *31 the plaintiffs in the partner’s house is a member, for transactions which took place while he was a member of both houses. Bosanquet v. Wray, 6 Taunton, 597. So that the * • , • * _ _ executor of the creditor being m that state in which he could not proceed against the co-obligor of Griffith, suspending the debt,would, in point of strict law, be an extinction ; for a personal action, once suspended, is forever discharged. But my opinion is founded on the payment and satisfaction; for so much is retainer, payment, that on plene administravit, it may be given in evidence. Plumer v. Marchant’s administrators, 3 Burr. 1380. And Chapman v. Turner, 11 Vin. Exr. D. 12, 2, gives an answer to the objection, that here are two administrators, one only of whom is the executor of the creditor; for there it was held that the retainer of one was the retainer of both, and this was quite just, as.it enured to the benefit of both estates. If there are two administrators, one may retain for his own debt; but if both have debts, assets ought to be applied to their mutual benefit.
In strict pleading, it may be doubted, whether the matter alleged as a defence, ought not to have been specially pleaded. So it was done in all the cases'I have stated, but as retainer may now be given in evidence on plene administravit, though formerly it could not, I can see no good reason why this special matter, which in fact is payment by the co-obligor, may not be given in evidence, to shew, if it-was not an actual' payment, that in equity and good conscience it ought not to be paid; for the-notice is substantially a bill in equity. Besides this was an issue, directed by the Court, to try the effect of this very matter, — the effect of these acts, — to try what was really due on this bond. The evidence went td shew that the defendant in error had in his actual possession the very money which ought to have been applied to this debt. This was evidence of actual payment, and it could make no difference, whether the debt was paid by Mr. Nicklin to Mr. Chew in his life time, or by his administrator to Mr. Cheiv’s executor. But whether extinguishment, payment, or satisfaction, in very deed, or by act and operation of law, under this issue and notice, the evidence was proper and ought to have been admitted. The evidence offered was proposed as one entire body of evidence, to shew the fact of assets applicable alone to the discharge of this debt; each item formed a link ist *32 the chain of evidence ; not oí devastavit, but of satisfaction an¿ payment. The case, however it might be put on extinguishment, according at least to the ancient doctrine of ex-tinguishment, by making' the debtor executor, and according to the case in- 2 Johns., yet I put it on the stronger ground, .on which it can safely rest, — payment and satisfaction; for extinguishment scarcely now exists to any purpose in a Court ’of equity; the executor being accountable to the residuary legatee, or next of kin, where the residue is not disposed of, for a debt due by him to the..testator, and compellable to state on: oach whether he. stands indebted to the testator. The appointment of the executor is only, a parting with the action ; but he is chargeable in equity; equity pre,vents the extinction of the débt. Winship v. Bass and others, 12 Mass. 202. This doctrine of extinguishment has become obsolete, in consequence of the application of principles and rules of equity, unless it appears the testator, by naming the debtor his executor, gives him not only the office of executor, but some, beneficial interest. He is considered as a trustee, holding a resulting -trusteeship for those entitled either as residuary legatees or next of kin. At no' one time in this State was it an extinguishment of the debt, for the executor'has always been held a trustee. Wilson v. Wilson, 3 Binn. 557; and an action for money had and received, will lie against him in his personal character, to recover a distributive share. The executor takes nothing but what is given him by the will, and this even before the Act of 7th April, 1807; which expressly enacts, that in a will not .disposing of personal estate, the executor shall distribute the residue among next of kin. The executors' and administrators are placed on the same footing. In Massachusetts there is a.similar provision ; and there it is held, that naming a debtor executor, and his acceptance of the trust, does not extinguish the debt.- It may suspend the remedy by action, but as soon as he takes upon him the execution of the will, to the amount of his debt', he has actually received so much money, and is accountable in his personal character, to those legally entitled to it-;' as the "same .hand is to receive that is to pay. There is no ceremony" to be performed in paying the debt, and no mode' of doing it, but by considering. the money to be in his hands. Stephens et al. v. Gayland, 11 *33 Mass. 259. The executor is quasi administrator, which never was held to extinguish the debt; and having voluntarily assumed the trust, which prevents any other from receiving.it, and being unable to sue himself, he shall be considered as having paid the debt, and holding the amount in his hands as executor, it being the same hand which ought to pay, that is to receive ; it is therefore considered as actually paid. Winship v. Bass and others, 12 Mass. 202. These decisions shew, that where there are assets or where the executor has rendered himself personally liable, the law applies the payment. As soon as Mr. Chew accepted the executorship of his father’s will, the assets in his hands as administrator of Philip Nicklin's estate, became applicable to this debt alone ; he has it actually in his hands as executor of his father. I repeat it, had the whole matter been pleaded, the administration, the assets, the appointment and acceptance of the executorship, and the plaintiff below had demurred, judgment ought to have been rendered for the defendant. But if this were not so clear at law, it would be a denial of justice to. exclude equitable considerations. Equitas sequitur legem. Where the law is ineffectual, equity steps in to redress, following however the rules of law. In Cowper v. Earl Cowper, 2 P. Wms. 753, Sir Joseph Jekyll, in commenting upon chancery jurisdiction observed, that the discretion to be exercised in that Court was to be governed by the rules of law and equity ; that in some cases it followed the law, and assisted it by advancing the remedy, though in others, it relieved against the abuse or allayed the rigor of it, but in no case contradicted or overturned the rules of law. One English Judge of great learning, Ch. J. De Grey, said, he never liked equity so well as when it was like law. The day before Lord Mansfield had said, that he never liked law so well as when it was like equity ; remarkable sayings of two very great men. But here, as I shall proceed to shew, the law and equity are the same, — they meet together, and no man can dislike their junction. It may be observed, that what once was mere equity, is now law. The allegation of the plaintiff in error .was, that he and his partner, Philip Nicklin, gave this joint and several bond, to the defendant*® testator; that separate judgments were obtained against his® and the plaintiff in error, as administrator of Nicklin ; that he has paid, or is willing to pay, his half of this bond j and *34 that sufficient, effects of Philip Nicklin to pay the other moiety, have came to the hands of the executor of the obligee, the administrator of his co-obligor, which can'alone legally be applied to this debt, which his duty, as the administrator of one, and executor of the other, required him is to appropriate. The question has no.relation to marshalling assets, or equitable assets. The natural equity of the case, is, that Griffith should pay one half of the debt, and the other half fall on the estate oí Nicklin. In this state of the case what would chancery do, even if the defendant in error had not the fund in his possession, but it was an effectual one,-— one appropriated by law, and which he had the power of reducing to possession, and dependent on his own will ? I think chancery would compel him to resort to this; for there are cases where equity would compel a creditor to resort, to a partially available fund before he pursues his creditor .personally.' The cases on this head are reviewed by Chancellor Kent, in Hayes v. Ward, 4 Johns. Ch. Rep. 132, and the principle acknowledged as applicable not only to a surety, but a principal debtor. This cáse has a very strong recommendation to the exercise of the equitable principle, when it is considered that the party admits of record, that he has not the fund to seek; that there can be no delay, expense, or hazard incurred by him, for he has the satisfaction already, and that which never can receive a satisfactory answer, he cannot assign it, if Griffith paid it. He cannot assign the debt due by himself. Besides, there would be nothing to assign, the debt is paid. The reason of the decision has been, that the creditor could not assign the benefit of the fund to the debtor. The law never would exact so idle and vain a ceremony, as to require Griffith to pay the debt and demand an assignment — -to distress him by compelling him to pay this debt to the defendant in error, in order to enable him instantly to recover it back. I do not say that the obligee in a joint and several bond, may not proceed against each, and recover judgment against each, and issue execution at his pleasure against either, or several executions against each, for he stands in no other situation than a creditor, with a choice of remedies; but he can have but one satisfaction. Here he has it; here the creditor has done an act which suspended his action against one; here his repre *35 sentative has received very satisfaction, very payment at law, certainly in equity; holds in his hands trust money, which chancery, on a bill filed by Griffith, would compel him to appropriate to this debt. As chancery would compel it to be done, under the plea of payment with leave and notice, the Court here would consider it as done, and direct the jury to presume it to have been paid. The evidence offered as to actual assets in the hands of the defendant, connected with the judgments confessed, would have established the fact of a fund in the power of the defendant, and more than that, an actual adequate fund in his actual possession, not an outstanding one j and shew that he was himself the debtor on the bond which he seeks to recover from Griffith. I do not see the difficulty as to the want of proper parties. The creditors of Nickiin would not be necessary parties in a bill, so long as. the judgments admitting assets to pay the debt stand unreversed. And if it is alleged that Griffith is indebted to Nicklin's administrators, this does not preclude the administrators from an action against him. The attempt of the defendant in error to put all the creditors of Nickiin on an equal footing, is the struggle of an honest and honourable mind to do what he supposes to be just, in a moral point of view, but which cannot be allowed by a sacrifice of the rights of the plaintiff in error, who has the strict law with him, and as I view this case in all its aspects, the strongest equity; an equity in which' the claims of other creditors can enter into no competition with him. It is manifest that the action is gone at law, because the administrator of Philip Nickiin could not proceed against him, and because a personal action once suspended by the voluntary act of the party entitled to it, is for ever gone and discharged. Unless the plaintiff below was entitled to equitable relief, the defendant stood protected by law; the right of action was discharged, and a scire facias• is in the nature of an action. If the equity of the other creditors urere equal to Griffith's, (superior it.could not be,) the law must prevail^ for equity cannot prevail against both law and equity.
Judgment reversed, and a venire facias de novo awarded.