IN THE MATTER OF THE ESTATE OF EDWIN GILBERT.

*Decree of surrogate — when appealable — Code of Civil Procedure, secs. 2568, 2570 — when real estate held by administrators is treated as assets—assignment of a mortgage as collateral security—right of the assignor to redeem after an assignee has purchased the property in under a foreclosure.*

In 1861 the appellant, George Thayer, was appointed one of the administrators of one Gilbert. At the time of Gilbert's death he held a note for $1,000 given by Thayer, and a mortgage given to Thayer by a corporation to secure the payment of its note for the same amount, which mortgage and note had been assigned by Thayer to Gilbert. Thereafter the company gave another mortgage on other lands to Thayer, who thereafter assigned the same to the estate of Gilbert as further security for the said note. In December, 1862, Thayer, as administrator, foreclosed the last mentioned mortgage; the premises being struck off to the administrators of Gilbert's estate for the sum of $1,168, although no money was in fact paid by them. Subsequently the administrators, without consideration, conveyed the said lands, by a deed expressing a consideration of one dollar, to a son of Thayer, and thereafter the son conveyed the same by a similar deed to Thayer. At the time of the foreclosure of the said second mortgage Thayer's note had not been paid or credited to the estate, but some months after the date of that sale the amount of the said note was credited to the estate as appeared upon the final settlement of the accounts of the administrators in June, 1864.

Thereafter these proceedings were instituted in which a decree was made by the surrogate requiring Thayer to account for the moneys subsequently received by him upon the sales of portions of the said land so conveyed to him, upon the ground that it belonged to the estate.

*Held,* that the said decree affected a substantial right of the administrators, and was as such appealable under sections 2568, 2570 of the Code of Civil Procedure.

That the surrogate had jurisdiction over the proceedings, as the land purchased by the administrators represented the mortgage, and should be treated as assets for the purposes of the accounting.

That the right of Thayer, as a debtor, to redeem the mortgage upon the payment of his debt, did not cease upon the sale and the purchase of the lands by the administrators, but continued unaffected by the change of the security, and that upon subsequently paying the debt he was entitled to retake and dispose of the lands for his own purposes.

APPEAL from an order of the surrogate of Ontario county, directing George Thayer, as administrator, etc., of Edwin Gilbert, to render an account of the proceeds arising from the sale by him of certain real estate.

In April, 1861, Edwin Gilbert died intestate, and in May following letters of administration were issued to Elizabeth C. Gilbert, his widow, and George Thayer, and they, as such administrators, made final settlement of their accounts, and a decree was entered accordingly by the surrogate in June, 1864.

Prior to the death of Gilbert, Thayer gave to him, Perry R. Pitts and Gideon Pitts, his two notes, one dated October 1, 1859, for $1,000, due at two years with interest, and the other for $2,000, dated November 1, 1859, due at three years with interest. A mortgage upon lands in the State of Minnesota, of the date of September 28, 1859, was made by the Little Falls Manufacturing Company of that State to Thayer, by its terms to secure the payment of its two notes made by it to him of dates October 1 and November 1, 1859, for $1,000 and $2,000, payable in two and three years, with interest at the rate of fifteen per cent per annum. By an instrument of the date of February 4, 1860, Thayer assigned and transferred this mortgage and the notes described in it to Gilbert and the two Pitts, by its terms to secure the payment of his two notes to them before mentioned. And it provided that " on the full payment of said notes this assignment to be void and of no effect." By an instrument of even date with the assignment, made by Gilbert and Gideon Pitts to Thayer, wherein the assignment and its purpose, as expressed in it are recited, and they say " now it is understood by the parties that if the mortgage is not paid as therein expressed, the

said Thayer have a reasonable time to close said mortgage before we call on him for the amount of his note."

On the 26th November, 1861, the Little Falls Manufacturing Company made to George Thayer another mortgage on other lands situate in the State of Minnesota, and on the west side of the Mississippi river, to secure the payment of its note to him of like date and due in one year with interest at the rate of twelve per cent per annum. And on August 8, 1862, Thayer assigned the. mortgage and note to the Messrs. Pitts, and the estate of Gilbert, deceased, as further security for the payment of his two notes first before mentioned.

In December, 1862, Thayer, in the names of the Messrs. Pitts and of Mrs. Gilbert and himself as administrators, instituted proceedings to foreclose the last mentioned mortgage by advertisement under the statute of Minnesota, which was accomplished by sale on the 16th February, 1863, and "struck off to George Thayer, administrator, and Elizabeth C. Gilbert, administratrix of the estate of Edwin Gilbert, deceased, for sums amounting in the aggregate to $1,168," but no money was in fact paid by them. About the time that such proceeding to foreclose was instituted, the administrators assigned the other mortgage to the two Pitts, and in their names afterward by suit in equity proceedings were taken to foreclose it, which resulted in a judgment of foreclosure October 24, 1863, and a sale by the master on January 13, 1864, and George Thayer was the purchaser. The master's deed was made to him April 3, 1875.

On the 24th May, 1865, the administrators made to Samuel R. Thayer, son of George Thayer, a deed of the premises so, as aforesaid, purchased by them on the foreclosure of the second mortgage. The consideration expressed in this deed was one dollar, but nothing was in fact paid. And Samuel R. Thayer on February 1, 1866, executed to George Thayer a deed of the same premises upon a like consideration expressed, and none was paid. On September 1, 1881, the latter sold and conveyed a portion of this land embraced in the last mentioned deeds to one De Graff for $25,000, and on the first of July, 1882, other portions of it to other parties for $12,000.

The widow Gilbert died in August, 1878, and on the petition of Edwin W. Gilbert and Albert J. Gilbert, sons of the intestate, proceedings were had before the surrogate to require George Thayer to

account, as administrator, for the proceeds derived by him from such sales of the land, and the surrogate, by order to that effect, granted the prayer of the petition, from which order Thayer appealed.

The other facts material to the review appear in the opinion.

*William F. Cogswell*, for the appellant.

*E. G. Lapham*, for the respondents.

BRADLEY, J.:

The form of the prayer of the petition is that Thayer, as surviving administrator, appear and render a further account of his proceedings. This is founded upon allegations in relation to the Minnesota lands and the proceeds of the sales. The order is to the same effect as the prayer of the petition, and further especially directs him to render an account of the proceeds of such sales.

The counsel for the petitioners contends that the order is not appealable because it is interlocutory, that it can be reviewed only after and with the appeal from the final decree, as the questions involved can only be determined by such final decree, and that until then it cannot be ascertained that the rendering of a further account will substantially affect the appellant. We think the order is one affecting a substantial right and appealable. (Code Civil Pro., §§ 2568, 2570; *Fiester* v. *Shepard*, 26 Hun, 183; affirmed, 92 N. Y., 251.)

On the part of the appellant it is insisted that the surrogate had no jurisdiction to entertain the proceeding for the purpose in view, for the reason that the appellant having possession of the land and claiming title, the relief in behalf of the petitioners required adjudication imposing and declaring a trust, and establishing his relation as trustee in respect to the premises.

The Surrogate's Court and his powers are created by and wholly derived from the statute. And he and his court have such jurisdiction only as is given by it. He cannot try an issue involving the validity of a claim. (*Hurlburt* v. *Durant*, 88 N. Y., 121.) And when a verified answer to a petition sets forth facts showing that it is doubtful whether the petitioner's claim is valid and legal and denying its validity and legality the petition must be dismissed. (Code Civil Pro., § 2718.) His jurisdiction in proceedings for

accounting, and for the disposition of the assets of the decedent, is prescribed and defined by the statute (Id., §§ 2472, 2718) and is confined within it. (*Bevan* v. *Cooper*, 72 N. Y., 317; *Seaman* v. *Whitehead*, 78 id., 306.)

There is no power in that court to declare and direct the execution of a trust, where the aid of a court is required to impose it. If such was the situation of the parties in their relation to the land in question and to each other, as to require the determination of a court to charge the appellant with the relation of trustee as distinguished from such relation a t law, then it was necessary first to go to a court of equity for the imposition and declaration of the trust, and the surrogate took no jurisdiction in the matter.

In this case the administrators as such took the title as purchasers on the mortgage foreclosure sale, and without any consideration paid, they through his son placed the title in the appellant. In the hands of the administrators the property had the character of personalty and the handing it over to one of them, unembarrassed with any other facts, would seem to continue its character and relation to the estate represented, of which it might be treated as assets for the purpose of accounting. (*Lockman* v. *Reilly*, 95 N. Y., 64; *Valentine* v. *Belden*, 20 Hun, 537; *Clark* v. *Clark*, 8 Paige, 152.) We are inclined to think that upon that state of facts the surrogate had jurisdiction of the proceeding, and that the answer to the petition was not such as to require the dismissal of the latter. If the appellant had no relation to the mortgage (pursuant to the foreclosure of which title was derived to the land) other than that afforded by his position as administrator, he clearly was disabled from taking title in his own right by the conveyance from the administrators through his son Samuel, and he would be treated as such trustee in respect to it and the proceeds of the sale. (*Case* v. *Carroll*, 35 N.Y., 385; *De Caters* v. *De Chaumont*, 3 Paige, 178.) That would have been his situation if he had been a stranger to the mortgage, until he assumed the relation of administrator.

He then could acquire no right of property for himself through or under the mortgage, or resulting from any proceedings founded upon it. But he had assigned the mortgage to his intestate and others as security for the payment of his notes made to them. The

apparent relation between him and the intestate was that of debtor and creditor, and assuming that it was such in fact, his right was to pay the debt and redeem the mortgage transferred by him as such security.

This proposition is not questioned. The contention of the counsel for the petitioners is that when the sale was had on the foreclosure of the mortgage, and the land purchased and title taken by the appellant and Mrs. Gilbert as administrators, the right of redemption by the appellant was gone, that the debt was paid by such purchase, that the property became in their hands a substitute for it, and that no debt remained to support redemption by him. A complete understanding of the situation requires the statement that the relation of Gilbert and the Messrs. Pitts was not that of joint creditors, but each was treated as the lender of one-third of the $3,000 for which the notes were taken. The latter were paid by the appellant, the amount going to them upon the notes, and the first mortgage on the premises on the east side of the river having been assigned by the administrators to them as representing their share in the securities, he was permitted and enabled to purchase the property upon the foreclosure of that mortgage. The other one, covering land on the west side of the river, was then held by the administrators solely as security for the debt due the estate of Gilbert, the amount of which was $1,000 and some interest.

The sale on the foreclosure of this mortgage was for a sum about sufficient to pay the debt and expenses of the sale. In June, 1864, application was made by the administrators for final settlement of their accounts which was had and completed in that month. And in the schedule of moneys collected and received by them is entered under date of May 30, 1863, as received the amount of the appellant's note. This is treated as the debt the security for which the mortgage was held by the estate. And the fact that entry of its receipt was upwards of four months after the foreclosure sale is referred to as a significant fact. And it is contended by the petitioners counsel that while Thayer may have had the right to pay the debt and have the mortgage restored to him before the foreclosure of it, that no right of redemption survived the sale. It may not be important for the purposes of this case to inquire whether from and after the time of his appointment as administrator

the appellant held the relation of debtor upon his note, or that of depositary of the amount of the debt as administrator. The debt in such case is deemed paid from that time if then due, or from the time it becomes due if not then payable, the amount of it in his hands as administrator, and he liable to account for it as assets.

This doctrine is founded upon the necessity arising out of the relation of administrator, as he cannot be prosecuted by action at law for the collection of the debt, and "proceeds upon the ground that when the same hand is to pay and receive, that which the law requires done shall be deemed done." (*Stevens* v. *Gaylord*, 11 Mass., 267, 271; *Ipswich Mfg. Co.* v. *Story*, 5 Metc., 310, 313; *Leland* v. *Felton*, 1 Allen, 531; *Kaster* v. *Pierson*, 27 Iowa, 90; 1 Am. R., 254; *Griffith* v. *Chew*, 8 Serg. & Rawle, 17; S. C., 11 Am. Dec., 56; *Beall* v. *Hilliary*, 1 Md., 186; S. C., 54 Am. Dec., 649.) And at common law the rule as to executors went farther, so that the appointment of a debtor executor operated to extinguish the debt and liability on account of it, except in the event of deficiency to pay debts and legacies. (*Gardner* v. *Miller*, 19 Johns., 188; *Marvin* v. *Stone*, 2 Cow., 781.) But by statute that rule has been so modified as to preserve the debt by way of assets in his hands, which has the effect to also preserve any existing security for the payment of, or liability to account for, the debt, and thus is removed the common-law distinction in that respect between executors and administrators. (2 R. S., 84, § 13; *Soverhill* v. *Suydam*, 59 N. Y., 140.) The appellant's notes became due before the proceedings were instituted to foreclose the mortgage, and it was thereafter held to secure his liability to account for and pay over the amount of it then deemed in his hands. This may be entitled to no consideration, as the security remained for such liability to account. And in the view taken of this case, on the assumption that the mortgage was held to secure the debt of the appellant, the question whether or not the debt may be deemed to have been paid by him before the foreclosure and sale is not important. By the foreclosure of the mortgage the equity of redemption of the mortgagor only was foreclosed; that of the appellant was not barred, but the title taken by the purchase was held as the mortgage had been, subject to his right of redemption. (*Slee* v. *Manhattan Co.*, 1 Paige, 48; *Hoyt* v. *Martense*, 16 N. Y., 231.) The only question is, what was the

character or extent of that right? It was suggested, in *Bloomer* v. *Sturges* (58 N. Y., 168), that the right of redemption in the assignor might be limited to the amount secured by the mortgage, and that a lien attached to the land purchased on the foreclosure to that extent only. The right so limited as one of redemption would be of no value to him as the amount required to redeem would equal that secured by the mortgage. The question was not in the Bloomer case. There the assignors were made parties defendant and their equity of redemption foreclosed by the judgment, and the remarks of the learned judge tending to qualify and limit the Slee and Hoyt cases were *obiter*. And in *Dalton* v. *Smith* (86 N. Y., 183) the court, by unqualified expression in the opinion, reaffirmed the doctrine of those cases. But in none of those cases did the facts require a complete determination of this question, as to the extent of the right of redemption, although in the two former ones it was fairly covered by the views given by the court in the opinions delivered. The proposition is one of importance and interest, and its disposition depends upon the rights as between the assignor and assignee of a mortgage assigned as security resulting from the foreclosure of it and the purchase of the premises by the latter, without barring the equity of redemption of the former, but vesting title absolute as against the mortgagor who held the legal title. Before the foreclosure the assignee, who has taken an assignment as security for a debt due him from the assignor, cannot, unless he has acquired some junior interest in the mortgaged premises, require the latter to accept the amount due him on the mortgage, and thereby extinguish the assignor's right of redemption. He forecloses the mortgage and becomes the purchaser without affecting such equity of the assignor. By what principle is he permitted for that reason to acquire a superior right then to extinguish such equity? The proceeds he has derived from the mortgage is the title relieved from the equity of the mortgagor. Who then is entitled to the benefit of the extinguishment of that equity of redemption? The assignee has taken it by means of the assignment to him of the mortgage as security. As between him and his assignor he was entitled to his debt, and the equity of the latter embraced all the benefits beyond that of the security furnished by the assignment of the mortgage, and this would seem to include the fruits derivable and derived from it. And it is difficult to see

why the assignee thus taking the title did not, as against his assignor, take and hold it as a like security as that for which he held the mortgage and as a substitute for it. The mortgage was a defeasible conveyance of the premises covered by it. The assignee has merely eliminated the defeasance and taken the title by force of the conveyance given by it.

The assignor's right of redemption must relate to the land as effectually and completely as it existed to reclaim the mortgage. The former has become a substitute for the latter, and as to the assignor the defeasance continues until legally barred. In such case the equity of redemption or title is held in the nature of a trust in behalf of the party having such right. (*Terrett* v. *Crombie*, 6 Lans., 82; affirmed, 55 N. Y., 683.)

The view of the learned surrogate, that because the appellant was the promoter of the foreclosure of the mortgage and a party to the proceedings he cannot assert that any right of redemption remained or was reserved for his individual benefit is not supported. Such proposition was urged and prevailed at Special Term in *Hoyt* v. *Martense* (8 How., 196) where the assignor of a mortgage as security was a party plaintiff with the assignee in an action to foreclose it. But the Court of Appeals held to the contrary and reversed the court below. (16 N. Y., 231.)

His relation as debtor to the intestate and the assignment to the latter by him of the mortgage as collateral security for its payment, relieves the appellant from disability to redeem the security so held by the administrators for the discharge of his liability. And he is legally no more embarrassed in the exercise of this equitable right than if he were a stranger to the trust.

But it is contended that the purchase of the premises was a satisfaction of the appellant's debt and merged it; that the land became a substitute for it, and that thereafter he could not account for the debt, because none remained, but must account for the land, its value or proceeds.

At the time of this foreclosure sale and purchase the appellant had not accounted for the debt secured by the assignment of the mortgage. And it was not only proper, but his duty to see that the security was retained until such liability to account was discharged. There is nothing in the circumstances of such foreclosure sale and purchase by the administrators to indi-

cate a purpose to change the relation of the property from that of security, for which the mortgage was held, to that of an indefeasible title in the representatives of the testator. This change would not result from the mere fact of such sale and purchase.

Merger is the consequence of the union in the same person of the legal and equitable estates, when those estates are co-extensive or when the legal estate is more comprehensive than the equitable one, subject, however, in equity to the intention of the party in whom they unite to continue the existence of the equitable estate. (*James* v. *Morey*, 2 Cow., 246.) And to permit merger both estates must also be held in the same right as well as by the same person.

The administrators were *sub modo* trustees of the appellant's equity of redemption of the mortgage which would not be merged and extinguished by the mere operation of law upon the sale and purchase by them. (*Hadley* v. *Chapin*, 11 Paige, 245.) The facts will not support the conclusion that he intended to surrender his equity of redemption and extinguish his liability to the estate by vesting title absolute for its benefit. He had no legal right to satisfy his liability by buying in property held as security for it. In such case if the property turned out not to afford proceeds sufficient to pay the amount of liability the trustee would still be liable to account for the deficiency. Otherwise, the opportunity to thus discharge his own debt might be productive of much abuse. And, as before remarked, the taking the title on the foreclosure sale in the name of the administrators was consistent with the duty of the appellant to continue the security for his liability to account for the amount of the debt to secure which the mortgage was assigned to his intestate. The amount of such debt was accounted for and his liability discharged before the conveyance was made of the land to his son Samuel for him. This was the method adopted to produce the redemption by him pursuant to the equitable right he had to accomplish it.

Thus far we have proceeded on the assumption that the debt was that of the appellant. This the surrogate has not distinctly found. But he has found that application was made to Messrs. Pitts and Gilbert in behalf of the Little Falls Manufacturing Company for a loan, and that they were willing to loan $3,000 if Thayer would guarantee or become responsible for it, and thereafter such proposition was accepted. The loan was consummated in the manner

before mentioned. And while the purpose was to enable the company to obtain a loan, the transaction as between the lenders and the appellant took the form which gave them the apparent relation of creditor and debtor by their taking the notes of the latter. And he took from the company its notes secured by its mortgage. And the lenders had nothing from the company except by the assignment made to them by the appellant, which was for the expressed purpose of securing the payment of his notes. This situation does not seem to affect the question here. He stepped in and assumed an original liability for the amount loaned and his relation must be treated in fact as it was in form, that of debtor. It was so treated by them in the papers made in relation to the matter, and by the administrators when the inventory of the assets of their intestate was made and in the final accounting had. And it became unnecessary to consider whether his rights would have been any different if they had depended upon that of subrogation.

There are some other minor matters having relation to a rate of interest upon the securities taken by the appellant from the company, greater than that afforded by his notes, in which the lenders claimed the right to participate, and on account of which the appellant later made some further payments to Pitts and some of the next of kin of the intestate. Those circumstances import nothing to defeat his equity or right of redemption. This right furnished a sufficient reason for, and to support the conveyance made to him. It does not appear that he at any time had the purpose to relinquish such right, nor is there any injustice to the petitioners by its exercise. They had the benefit derived from the payment by him of the debt which was the extent of the liability to the estate arising out of the loan, and the appellant by such payment redeemed that which had been received from him as collateral security for the debt he had so incurred to his intestate. The ultimate value of such security is entitled to no consideration upon any question involved in this review. The view taken of this case requires the consideration of no other question presented on the argument.

The order of the surrogate should be reversed.

SMITH, P. J., BARKER and HAIGHT, JJ., concurred.

Order of surrogate reversed, with costs of this appeal.